## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

RONNIE MARTIN,                          )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )      Case No. CIV-04-1155-F
                                        )
NORTHFORK ELECTRIC                      )
COOPERATIVE, INC., a Corporation,       )
                                        )
        Defendant.                      )

## AMENDED ORDER

The "Motion for Summary Judgment of Defendant Northfork Electric Cooperative, Inc.," filed July 29, 2005, is before the court. (Doc. no. 26.)[1]

This action involves a dispute which arose after plaintiff Ronnie Martin, a lineman and eventually a journeyman lineman who worked for Northfork Electric Cooperative, Inc. (Northfork) from 1981 until 2001, was reassigned to Northfork's Reydon, Oklahoma district. Prior to the reassignment and at all times relevant to this action, Mr. Martin was stationed at Northfork's Sayre, Oklahoma office, and he worked in the Elk City area of the State. (Defendant's statement of undisputed material facts, UMF, nos. 2,3.)

The Complaint alleges that Mr. Martin "was subjected to terms and conditions of employment different than that of similarly situated younger employees, including constructive discharge." (Complaint, ¶ 9.) On this basis, Mr. Martin alleges age

---

[1]As the court's Order of October 19, 2005 provided, this Amended Order re-states the court's earlier rulings on the ADEA claim and related matters verbatim (with the addition of this note and n. 3) and incorporates the court's new rulings on the viability of plaintiff's workers' compensation retaliation claim.

discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) ("First Cause of Action") and he alleges retaliatory discharge in violation of Oklahoma's worker's compensation laws, 85 O.S. § 5 ("Second Cause of Action"). Defendant has moved for summary judgment on both claims. Plaintiff has responded, defendant has replied, and the motion is ready for determination.

## I.  Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Some additional matters relevant to the standards applied by the court need to be addressed. The first is plaintiff's request that the court stay determination of defendant's motion until ten days following the close of discovery in this action. Plaintiff asks for an extension until that time to respond to the motion for summary

judgment.[2]  Plaintiff cites Fed. R. Civ. P. 56(f) and relies on Mr. Martin's affidavit to meet the  requirements of that rule.  Mr. Martin's affidavit states, several times, that more discovery is needed before he can "admit or deny" defendant's proposed undisputed material facts.  Mr. Martin states that "discovery is ongoing, the deadline has not passed," and that certain information "can only be determined through additional discovery."  He states that "Defendant has not produced witnesses for deposition as my attorneys have requested," and that "the depositions of Defendant's witnesses is [sic] crucial in order to fully be able to respond [to] this Defendant's Motion for Summary Judgment."  Mr. Martin then lists seven witnesses whose depositions he "especially" needs to take.

To invoke the protections of Rule 56(f), the party filing the affidavit must state with specificity how the desired time would enable them to meet its burden in opposing summary judgment.  <u>Jensen v. Redevelopment Agency of Sandy City</u>, 998 F.2d 1550, 1554 (10th Cir. 1993) (citations omitted.)  Rule 56(f) may not be invoked by mere assertions that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable.  *Id.*  The party filing the affidavit must show how additional time will enable him to rebut the movant's allegations of no genuine issues of fact.  *Id.*  Affidavits which merely state in conclusory terms that the affiants are unable to obtain the deposition testimony in question and that, if given more time, the affiants could conduct more discovery, are inadequate under Rule 56(f).  *Id.*

Mr. Martin has failed to explain with any specificity how additional time will enable him to rebut Northfork's proposed undisputed facts or otherwise help him meet his burden in opposing summary judgment.  His list of seven witnesses which he seeks

---

[2]Plaintiff's requests are motions improperly embedded in a response brief, and the court has no obligation to consider them.  LCvR7.2(c).

to depose reads more like a request to begin general discovery than a Rule 56(f) request for additional time.  Mr. Martin's statements that discovery is on-going are also inadequate grounds to invoke the protections of Rule 56(f).  The undersigned's scheduling orders routinely require dispositive motions to be filed before discovery closes.  As explained at every scheduling conference, this sequence allows discovery loose-ends to be wrapped up after dispositive motions are filed, but it also, obviously, requires counsel to obtain whatever discovery is needed for dispositive motions well before the dispositive motions deadline.  The requested extension is a long one, seeking to postpone plaintiff's complete response until October 25, 2005, ten days after the close of discovery on October 15.  Yet there is nothing to suggest that it is unfair to hold Mr. Martin to the usual schedule.  Nor has Mr. Martin provided any reason for the court to believe that granting the requested extension would impact, in any way, the court's ultimate ruling on Northfork's summary judgment motion. Finally, moving for protection under Rule 56(f) is an *alternative* to filing a response in opposition to a motion for summary judgment.  <u>Pasternak v. Lear Petroleum Exploration, Inc.</u>, 790 F.2d 828, 833 (10th Cir. 1986) (emphasis in original).  Here, Mr. Martin has already responded to the motion for summary judgment.

For all of these reasons, the court determines that Mr. Martin's motions for an extension and a stay, whether considered as motions under Rule 56(f) or otherwise, should be, and hereby are, **DENIED**.  Accordingly, defendant's motion for summary judgment will be determined in the usual manner, that is, based upon the record evidence as it stands at the time of briefing.

The second issue, which is related, concerns a number of plaintiff's responses to defendant's proposed undisputed material facts.  Many of those responses state that plaintiff is either unable to admit or deny defendant's facts, or that the accuracy of defendant's facts can only be determined through additional discovery.  As all material undisputed facts of a movant are deemed admitted unless specifically

controverted by  record evidence,  this type of response fails to place any facts in dispute.  LCvR56.1(c).  Accordingly, the court finds and concludes that plaintiff's unsupported or conclusory  denials, or denials which state that additional discovery is needed, fail to place any facts in dispute and are the equivalent of admissions in this case.

## II.  ADEA Claim

Plaintiff relies on circumstantial evidence to establish his age discrimination claims, so the burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) applies.[3]  <i>See</i>, <u>Garrett v. Hewlett-Packard Co.</u>, 305 F.3d 1210, 1216 (10th Cir. 2002) (applying burden-shifting in a Title VII and ADEA case). When a plaintiff's prima facie proof  is challenged by a properly supported motion, this  three-step  analysis  first  requires  plaintiff  to  prove[4]  a  prima  facie  case  of

---

[3]As discussed later in more detail, plaintiff's affidavit and deposition testimony state that plaintiff was told by other employees that plaintiff's superiors had made a statement(s) to the effect that the company was trying to get rid of plaintiff because he was old and slow.  Despite this testimony, plaintiff has not argued that this is a direct  evidence  case.   Rather,  both  parties  have  consistently  argued  that  the <u>McDonnell Douglas</u> framework applies, and so the court has used that framework. In any event, the court has determined that the "old and slow" evidence is inadmissible for the reasons stated later in this Order, so that this arguably direct evidence of discrimination is, therefore, not properly considered, all of which leads the court and parties back to the <u>McDonnell Douglas</u> framework.  Under either type of analysis, there is no evidence to support the ADEA claim.

[4]Plaintiff need not actually "prove," "show," or "establish" anything to defeat defendants' motions.  Plaintiff must merely demonstrate the existence of a genuine issue of material fact.  Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage.  <u>Goodwin v. General Motors Corporation</u>,  275  F.3d  1005,  1011  at  n.7  (10th  Cir.  2002)  (abrogated  on  other grounds.).

discrimination.  *Id*.  If plaintiff establishes a prima facie case, then the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions.  *Id*. If the defendant does so, then in an age discrimination case such as this one, the plaintiff must either show that his age was a determinative factor in the defendants' employment decision, or show that the defendants' explanation for its action was merely a pretext for age discrimination.  *Id*.

## A.  Constructive Discharge Claim

Plaintiff's response brief does not address defendant's argument that there is no evidence to support a constructive discharge claim; the words "constructive discharge" do not even appear in plaintiff's response brief.  Based on plaintiff's briefing, his theory of liability with respect to his discharge no longer appears to be that his assignment to work in the Reydon district was an intolerable working condition which forced him to resign and which therefore constituted a constructive discharge.  Rather, plaintiff appears to contend that he never resigned in any sense of the word because defendant actually terminated him.[5]  Accordingly, the court finds that plaintiff has confessed defendant's arguments with respect to any claim of constructive discharge based on age discrimination.  *See*, LCvR7.2(f) (arguments not opposed may be deemed confessed).

Out of an abundance of caution, the court alternatively finds that the evidence is insufficient to support a constructive discharge claim in any event.  Plaintiff has identified no evidence suggesting that Northfork made working conditions so difficult for plaintiff that a reasonable person in plaintiff's position would feel compelled to resign.  *See*, <u>Sanchez v. Denver Public Schools</u>, 164 F.3d 527, 534 (10th Cir. 1998)

---

[5]For example, Mr. Martin's affidavit (attached as Ex. 1 to his response brief) states that "I specifically deny that I quit," and "I was terminated by Northfork." (Affidavit, ¶ 16.)

(summary judgment in favor of school district affirmed where teacher's constructive discharge age discrimination claim was based on the district's transfer of plaintiff to another school farther away and there was no evidence that conditions were so objectively intolerable that plaintiff had no choice but to resign).

For both of these reasons, either of which is sufficient standing alone to support the court's ruling, the court finds and concludes that Northfork is entitled to judgment on Mr. Martin's age discrimination claim to the extent his claim is based on allegations of constructive discharge.

### B.  Actual Discharge Claim:

#### Prima Facie Case

A prima facie case of discriminatory discharge brought under the ADEA requires evidence:  1) that plaintiff is in the protected age group at the time of the discharge, 2) that he was doing satisfactory work, 3) that he was discharged, and 4) that his position was filled by a younger employee or that he was treated less favorably than younger employees.  Thompson v. Cendant Corp. 130 F. Supp. 2d 1255, 1262 (N.D. Okla. 2001).  The fourth element is a flexible one which can be satisfied differently in varying scenarios.  *See*, Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005) (Title VII gender discrimination case stating this and citing other authorities).  The critical inquiry is whether termination occurred under circumstances that give rise to an inference of discrimination.  *See, id*. at 1101.

Plaintiff has identified no comparative, empirical, or even fact-specific evidence to indicate that similarly situated employees were treated differently than he was with respect to his discharge.  Based on a similar state of the evidence, or lack of it, summary judgment was upheld in Munoz v. St. Mary-Corwin Hospital, 221 F.3d 1160, 1165-1168 (10th Cir. 2000).  In Munoz, a hospital was sued by a terminated physician who alleged age and national origin administration.  The Court stated that

the plaintiff had failed to support his allegations with any specific facts or empirical evidence other than his general statements that other residents were treated more favorably. *Id*. at 1167.[6]

Despite a lack of comparative evidence, a prima facie case can be established in a variety of ways, including by remarks, so long as there is at least some evidence giving rise to an inference of discrimination. *See*, Plotke, 405 F.3d at 1101, quoting Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (a variety of circumstances can give rise to an inference of discriminatory motive including remarks made by decision-makers that could be viewed as reflecting a discriminatory animus). Here, plaintiff does identify one set of remarks concerning his age and slowness. Based upon what he was told by Northfork employees, he contends these remarks were made by other Northfork employees. For reasons discussed in more detail below (in Part <u>D</u> of this Order concerning pretext), the court finds that in the circumstances of this case, these remarks are inadequate to establish a prima facie case of age discrimination.

As there is no evidence that similarly situated employees were treated differently than plaintiff, and as there are no circumstances which give rise to an inference of unlawful age discrimination, the court finds and concludes that there is no evidence to establish the fourth element of a prima facie case of discriminatory discharge. Accordingly, Northfork is entitled to summary judgment in its favor on

---

[6]Munoz makes these observations in the portion of that decision which deal with pretext, but notes that its pretext discussion is also applicable to the ADEA claim which the court had already found was not viable based on the lack of a prima facie case. Munoz at 1166, n.4.

Mr. Martin's age discrimination claim to the extent that claim is based upon allegations of discriminatory discharge.[7]

### C.  Claims Based on Reassignment to the Reydon District
### and Other Terms and Conditions of Employment:

#### Prima Facie Case

To establish a prima facie case of discriminatory transfer, or of discrimination by subjecting plaintiff to other terms and conditions of employment different than those to which other employees were subjected, there must be evidence:  1) that plaintiff is a member of a protected class, 2) that he suffered an adverse employment action, 3) that he was qualified for the position at issue, and 4) that he was treated less favorably than individuals not in the protected class.  Sanchez, 164 F.3d at 531.

Here, as in Sanchez, plaintiff has not shown that his reassignment to Reydon involved any special circumstances which might suggest that this transfer resulted in anything beyond an inconvenience or an alteration of plaintiff's job responsibilities. *See*, *id.* at 532.  For example, there is no evidence that Mr. Martin's pay or benefits changed as a result of the reassignment.  *See*, *id.* at 532.  Furthermore, it is undisputed that prior to his reassignment to the Reydon district, Mr. Martin was stationed in Sayre, Oklahoma and that he worked in the Elk City eastern area.  Thus, even prior

---

[7]The court notes Mr. Martin's deposition testimony (attached to response brief as Ex. 2, at pp. 48-49, in which he testified that he refused to take the assignment in Reydon and that he also told Gary "I'm not moving to Reydon because I just bought a house." The court realizes that Mr. Martin now contends he was terminated and that he cites his affidavit to that effect, claiming that there is a disputed fact issue as to whether he was discharged or resigned.  An affidavit which conflicts with prior sworn testimony is an attempt to create a sham issue of fact and will be disregarded.  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  Judging the affidavit by these standards, it appears there may also be no evidence to support the third element of a prima facie discharge case, which requires a discharge to have occurred.

to the reassignment, his job required some travel.[8] Mr. Martin's reassignment to the Reydon area was similar to the "purely lateral transfer" which occurred in Sanchez when the plaintiff was assigned to a different school which required a thirty to forty minute commute rather than a five to seven minute commute. *See, id.* at 532. In Sanchez, the Court held that plaintiff's transfer did not constitute an adverse employment action so that there was no prima facie case. *Id.* Likewise here, Mr. Martin has failed to establish that his reassignment to Reydon constituted an adverse employment action.

As there is no evidence to establish the second element of a prima facie discriminatory transfer case, the court finds and concludes that Northfork is entitled to summary judgment on Mr. Martin's claim that his reassignment to Reydon was discriminatory under the ADEA.

The other terms and conditions of employment which plaintiff challenges as discriminatory may be grouped into three categories: educational opportunities, reprimands, and wages.[9]

_____

[8]The court takes judicial notice of approximate distances. According to internet mapping sources, it is approximately 30 miles between Sayre and Reydon. It is approximately 16 miles between Sayre and Elk City. It is approximately 33 miles between Elk City and Reydon.

[9]These are the terms and conditions of employment which defendant addresses in its moving brief, and plaintiff does not argue that the list is incomplete. The portions of Mr. Martin's deposition which are attached to the briefing also indicate that, other than discharge and transfer, this is a complete description of the other terms and conditions of employment which are in issue. In answers to interrogatories (attached as Ex. 5 to defendant's moving brief) Mr. Martin also makes the conclusory statement that certain younger employees got more respect, however, in his deposition, he stated that he knew of no other ways (other than educational opportunities, reprimands, and pay) that younger employees got more respect. (Martin deposition at p. 72, Ex. 2 to moving brief.)

Mr. Martin complains that he did not receive the same education as younger employees. In his deposition, however, he admits that younger employees were required to pass tests which he was not required to pass when he became a journeyman lineman because he was "grandfathered in." (Martin deposition at p.66, attached as Ex. 2 to moving brief.) Mr. Martin also complains that he received more reprimands than younger employees. At his deposition, however, he admitted that these younger employees were apprentices and that standards are higher for a journeyman lineman than for an apprentice. (Martin deposition at p.68, attached as Ex. 2 to moving brief.) Mr. Martin also testified that his only knowledge of the reprimands given to others was based upon what other employees told him and that he had never seen any records regarding employee reprimands. (Martin deposition at p. 69, attached as Ex. 2 to moving brief.)

The court finds that there is no evidence to show or suggest that there was an adverse employment action with respect to educational opportunities or reprimands. Given the lack of specific facts and empirical or comparative data, the court also finds there is no evidence showing that Mr. Martin was treated differently from other similarly situated employees with respect to these terms or conditions of employment. *See*, Munoz, 221 F.3d at 1167. Accordingly, Mr. Martin has not established the second and fourth elements of a prima facie case based on claimed differences in educational opportunities and reprimands, and the court finds and concludes that Northfork is entitled to summary judgment on these aspects of Mr. Martin's age discrimination claim.

The final term or condition of employment which Mr. Martin claims he was subjected to in a discriminatory fashion is his contention that younger employees received more frequent raises and in a higher proportion than plaintiff did, so that his pay raises were not commensurate with the raises which younger employees received.

-11-

(Plaintiff's responses to UMF nos. 21,22.)  Plaintiff complains that when selective raises were handed out he did not receive any.  (Plaintiff's response to UMF no. 24.) When asked at his deposition, "Who got more raises than you did?," Mr. Martin answered, "I have no idea."  The questioner asked him, "Well, how do you know that you didn't then?," and Mr. Martin answered "I just do."  Mr. Martin then testified that "Well, like Glen was making more than I was."  Mr. Martin admitted, however, that Glen [Tignor] was six months to a year senior to him.  (Martin deposition at p. 70, attached as Ex. 2 to moving brief.)  Other than his conclusory deposition testimony and his equally conclusory affidavit, plaintiff has offered nothing to show that he was treated any differently than any similarly situated employees with respect to his wages or pay raises.  Accordingly, plaintiff's evidence is insufficient under the standards of Munoz, where summary judgment was upheld for lack of any empirical or evidence or specific facts other than plaintiff's general statements that other employees were treated more favorably.  Munoz, 221 F.3d at 1167-68.

As there is no evidence to establish the fourth element of a prima facie case of age discrimination based on different treatment with respect to wages or pay raises, the court finds and concludes that Northfork is entitled to summary judgment on this aspect of Mr. Martin's age discrimination claim.

### D.  Defendant's Stated Reasons for its Conduct

Having found insufficient evidence to support a prima facie case with respect to any aspect of Mr. Martin's age discrimination claim, it is unnecessary to consider whether Northfork has sufficiently articulated a non-discriminatory reason for its conduct.  However, the court wishes to support its rulings with an analysis of the pretext issue as well as its analysis of prima facie elements.  Therefore, this Order goes on to address whether defendant has met its burden to show a legitimate reason

for any of its challenged conduct and, if so, the resulting question of whether plaintiff has carried his burden to show that defendant's stated reasons are merely pretext.

As concerns Mr. Martin's claim for discriminatory discharge, Northfork has presented detailed affidavit testimony from Scott Copeland, general manager of Northfork, stating that when Mr. Martin was assigned to Reydon Mr. Martin refused the assignment and quit his job. (Mr. Copeland's affidavit, attached as Ex. 3 to defendant's moving brief.) Mr. Copeland's affidavit indicates that he asked Mr. Martin to reconsider his resignation but that Mr. Martin stated that if his assignment was to the Reydon district then he was not interested. Mr. Copeland states that at that point he acknowledged Mr. Martin's resignation. Thus, the articulated non-discriminatory reason for Northfork's discharge of Mr. Martin is that Mr. Martin resigned when he was reassigned to the Reydon district.

As concerns Mr. Martin's claim that his reassignment to Reydon was discriminatory, Northfork has presented evidence indicating it needed an experienced journeyman lineman to work in Reydon and that Mr. Martin was the only experienced lineman available for assignment to that office. On this point, Northfork again offers Mr. Copeland's affidavit, which states that Northfork's decision to assign Mr. Martin to Reydon was based on the company's need for an experienced journeyman lineman in that area to work with an inexperienced lineman in the area, following the resignation of the experienced journeyman lineman who had been previously working in Reydon. Mr. Copeland states that it was not practical to assign the only other journeyman lineman to Reydon because that individual, Glen Tignor, was the construction foreman in addition to being district lineman for the Sweetwater district. (*See*, Copeland affidavit attached as Ex. 3 to defendant's moving brief; defendant's UMF nos. 5-8, deemed admitted.) Thus, Northfork's stated reason for reassigning Mr.

Martin  to Reydon is that  it had no other journeyman lineman to assign to that work when the need arose.

With respect to plaintiff's claim that Northfork discriminated against plaintiff concerning educational opportunities, reprimands, and wages, Northfork's stated reasons for its conduct are articulated by Mr. Martin himself during his deposition. As already discussed, Mr. Martin testified that younger employees were required to pass exams which he had not been required to pass.  Thus, Northfork's position is that different education was provided to younger employees because different requirements applied to them.  As for reprimands, Mr. Martin testified that  younger employees were apprentices and that apprentices were held to different standards. This is the reason which Northfork offers for any different treatment with respect to reprimands.  Finally, with respect to wages and raises, the only employee which Mr. Martin specifically identified in the cited portions of his deposition as making more than he did was an employee who was senior to Mr. Martin.  Thus, Northfork's articulated reason for paying Mr. Tignor more than it paid Mr. Martin is that Mr. Tignor was senior to Mr. Martin.

The court finds and concludes that Northfork has adequately articulated non-discriminatory reasons for its treatment of Mr. Martin.

### D.  Pretext

Pretext can be demonstrated by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions so that a reasonable fact-finder could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reason.  Garrett, 305 F.3d at 1217 (10th Cir. 2002) quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  As stated in Munoz, the ultimate question with respect to whether there is any evidence of pretext is whether,

considering all of the allegations and evidence before the court, plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether the defendant's proffered reasons are pretext for discrimination.  Munoz, 221 F.3d at 1168.

In an effort to show pretext, plaintiff relies on his testimony regarding statements he asserts were made to him by employees who plaintiff contends repeated to plaintiff the comments of still other employees.  As plaintiff's response brief (at p. 9) puts it:  "Plaintiff has provided sworn testimony that at least two other co-workers informed him that Defendant had been talking about getting rid of him because he was old and slow in the months just prior to his termination."  In his affidavit (attached as Ex. 1 to his response brief), Mr. Martin names these two employees as Jimmy Parks and Glen Tignor.  He states that they "told me separately that my superiors were trying to find a way to get rid of me or run me off because I was old and slow." (Last page of Mr. Martin's affidavit, ¶ E.)  In the deposition testimony which plaintiff cites to support this affidavit, Mr. Martin testifies that "He [apparently referring to Glen Tignor] just told me that he heard them discussing that I was getting slower and they needed to do something with me."  (Martin deposition at p. 56, attached to response brief as Ex. 2.)  Mr. Martin went on to testify that he did not know "for sure" who it was that this person had heard making these comments, but that it might have been "Scott and Gary."  He testified that he did not know when this earlier conversation which possibly might have been between Scott and Gary had occurred, but that the conversation with Glen Tignor in which this prior conversation was reported to him occurred about a week "before all of this come to a head."  (Martin deposition at pp. 56-57, attached as Ex. 2 to response brief.)

Assuming for purposes of this motion that the original statements were made by "Scott and Gary" or other employees of Northfork, an admission by a party is

admissible in evidence only if a witness who heard the party make the statement is presented for cross-examination.  <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1542 (10th Cir. 1995).  In <u>Gross</u>, the Court noted that it is well settled in this circuit that only evidence which is admissible in evidence is admissible with respect to summary judgment.  <i>Id.</i> at 1541. The Court then held that the plaintiff had failed to present percipient witnesses to testify regarding the statements which the plaintiff attributed to a party.  <i>Id.</i> at 1542.  The Court concluded that the record contained no admissible evidence that the party had made the comment in question.  <i>Id.</i>

Plaintiff has not presented any witnesses for cross examination -- by deposition excerpts, affidavits, or otherwise -- to testify with respect to any of the statements or conversations in question.  Other than his own vague testimony about the two sets of conversations in question (the conversations in which he was told of the prior conversations, and the prior conversations themselves), plaintiff has not identified any evidence which would support or explain the trustworthiness of any of these conversations.  The court finds and concludes that there is no admissible evidence regarding the conversations in question, and that there is no other evidence to support a finding of pretext.

Accordingly, the court finds and concludes that defendant is entitled to summary judgment on all of Mr. Martin's age discrimination claims because there is no evidence of pretext.

### III.  Workers' Compensation Retaliation Claim

The remaining claim is for violation of Oklahoma's workers' compensation anti-retaliation law, 85 O.S. § 5.  At plaintiff's request, and in order to prevent an injustice, the court retains this claim pursuant to its supplemental jurisdiction. (Order, October 19, 2005, doc. no. 38.)

Defendant argues there is no evidence to establish the fourth element of a prima facie case of retaliation. That element requires proof that an employee's termination was consequent to a job-related injury. *See*, Wallace v. Halliburton Company, 850 P.2d 1056, 1059 (Okla. 1993) (prima facie case of retaliatory discharge requires proof of 1) employment, 2) job-related injury, 3) medical treatment so that the employer is put on notice of a good faith start of workers' compensation proceedings, and 4) *consequent* termination (emphasis in original)). Whether there was a consequent termination is dependent upon the employee producing evidence as would give rise to a legal inference that the discharge was significantly motivated by retaliation for the employee exercising statutory rights. *Id.*

Timing, by itself, does not give rise to the level of evidence required to establish a prima facie case. *Id.* Where a plaintiff relies upon the timing of events, there must also be other evidence, such as the type the court relied on in Wallace. In Wallace, there was evidence: that employees were encouraged to file work-related injuries under the employer's self-health insurance rather than under workers' compensation; that plaintiff and another employee had filed previous injuries under their health insurance rather than apply for workers' compensation; that a supervisor "got mad" when another employee said he was going to file a workers' compensation claim; that other employees were worried about being discharged if they filed a claim; that employees less qualified than the plaintiff but who had not filed claims were not let go; and finally, evidence was offered of a pattern of terminating employees who filed workers' compensation claims. *Id.*[10]

_____

[10]The only evidence of any pattern of conduct relating to Northfork's general treatment of workers' compensation claims are documents indicating Mr. Martin filed three workers' compensation claims (in addition to the claim for the 2001 injury) during his employment for Northfork. (Moving brief, ex. nos. 9,10,11, workers'
(continued...)

Discussing this issue, <u>Wallace</u> reaffirms the Oklahoma Supreme Court's ruling in an earlier case, <u>Thompson v. Medley Handling, Inc.</u>, 732 P.2d 461, 464 (Okla. 1987).   Relying on <u>Thompson</u>, <u>Wallace</u> states that if the timing of a discharge is "basically all" a plaintiff relies upon, it is not enough.   <u>Wallace</u> at 1059.   <u>Thompson</u> explains that to hold otherwise would be to require any employer laying off a worker who has at any time in the past filed a workers' compensation action to submit to a trial based purely on the coincidence of the layoff and the past filing or on-the-job injury.   <u>Thompson</u>, 732 P.2d at 464.   In <u>Thompson</u>, the only evidence connecting the relevant events was the fact that they happened six weeks apart.   The Court found that nothing could be legally inferred from this timing and that, other than the employer's stated reasons for the discharge, reasons for the discharge could only be deduced by "pure speculation."   *Id*.   <u>Thompson</u> concluded that the case should not have been submitted to the jury because the trial court should have directed a verdict in favor of the defendant.   *Id*.

Here, as in <u>Thompson</u>, plaintiff argues that "a causal connection" can be shown "by reviewing the timeline between Plaintiff's on-the-job injury and his termination, and the amount of knowledge Defendant had regarding Plaintiff's need for future treatment and consequential time off."   (Response brief, p. 11, unsupported with citation to any evidence.)   Plaintiff also argues that "Defendant was well aware that Plaintiff's injuries were significant and would require his absence for an undetermined

---

[10](...continued)
compensation court documents.)   Northfork argues that this pattern belies any suggestion that Northfork discouraged the filing of claims.   The court does not rely on this evidence,   nor does it adopt defendant's argument on this point, however, because defendant has not made this evidence or this contention the subject of any proposed undisputed facts, and as a result, plaintiff has not been required to admit or dispute them.

period for treatment and surgery." (Response brief, p. 11, unsupported with citation to any evidence.)

Although plaintiff's response brief does not even bother to set out the specifics of the timeline which plaintiff asserts as the basis for his retaliation claim, the court has derived the following timeline from the undisputed facts. On approximately March 7, 2001, plaintiff suffered an on-the-job injury; plaintiff received a release to return to work on March 30, 2001; he returned to work approximately one week prior to his April 9, 2001 discussion with Northfork regarding his transfer to Reydon; and on April 9, 2001, Northfork informed plaintiff that the company was assigning him to Reydon. (Def's und. fact nos. 9, 10, 11, 11; there are two und. facts no. 11.) There is disputed evidence as to whether plaintiff then resigned or was discharged, but it is not disputed that, one way or the other, plaintiff's employment with Northfork ceased on or about April 9, 2001. (Def's und. fact no. 16 and plaintiff's response, not disputing date but disputing that he quit.) Thus, it is undisputed that there were approximately 34 days (inclusive) between the date of plaintiff's injury and the date he ceased working for Northfork. It is also undisputed that plaintiff filed a claim with the workers' compensation court on May 30, 2001, approximately 52 days (inclusive) after he ceased working for Northfork on April 9. (Def's und. fact no. 17.)

Other than referring the court to a timeline and arguing that Northfork had knowledge about plaintiff's need for future medical treatment and time off, plaintiff has presented nothing to suggest that Northfork's decision to assign Mr. Martin to Reydon or to terminate him (which the court presumes for now is what happened) was significantly motivated by Mr. Martin's on-the-job injury or by any protected action. The court concludes that under the Oklahoma authorities, there is no evidence to establish the fourth element of a prima facie retaliation case and defendant is entitled

to summary judgment on that basis. <u>Wallace</u>, 850 P.2d at 1059; <u>Thompson</u>, 732 P.2d at 464.

Although this conclusion makes it unnecessary to further consider the matter, the court also finds that Northfork has articulated reasons for its conduct -- those reasons being that Mr. Martin resigned and was not discharged, that Mr. Martin was unable to perform the job in question so that the company had no obligation to retain him, and that Mr. Martin was assigned to Reydon because there were no other employees qualified and available for this assignment.  In response to these reasons, plaintiff has identified no evidence tending to show any pretext on Northfork's part. <u>Blackwell v. Shelter Mut. Ins. Co.</u>, 109 F.3d 1550, 1554 (10th Cir. 1997) (retaliation case under 85 O.S. § 5, upholding summary judgment after applying Oklahoma law and shifting burdens to find no evidence of consequent termination and no evidence of pretext).[11]

---

[11]Defendant makes two other arguments in support of summary judgment on this claim, one of which the court rejects and one of which it does not reach. Defendant argues it is undisputed that plaintiff was not discharged and that he actually resigned.  The court finds there are genuine issues of material fact with respect to this issue.  Defendant also argues that plaintiff does not have standing to assert a violation of 85 O.S. § 5, based on defendant's contention that it is undisputed plaintiff was unable to perform the job in question when he resigned or was discharged.  Plaintiff disputes defendant's interpretation of the workers' compensation court rulings cited by defendant and also disputes defendant's interpretation of plaintiff's testimony during workers' compensation proceedings.  Some of that testimony is new material included for the first time in defendant's reply brief.  Accordingly, in reaching the determinations stated in this Order, the court has not considered that new material. Nor has the court considered any other evidence or arguments which were submitted for the first time in defendant's reply brief. (See Order, September 20, 2005, doc. no. 40.)  It is not necessary to reach defendant's standing argument, and the court declines to do so.

Thus, in addition to its conclusion that there is no proof of a prima facie case, the court also concludes that there is no evidence of pretext.  Either of these determinations, standing alone, requires summary judgment in defendant's favor on plaintiff's workers' compensation retaliation claim.

## IV.  Conclusion

For these reasons, after careful consideration of the pleadings, the record, the parties' submissions, and the relevant legal authorities, defendant Northfork Electric Cooperative, Inc.'s Motion for Summary Judgment is **GRANTED** on all claims.

Dated this 25th day of October, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1155p008(pub).wpd